UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW ROBERT DENSMORE,

    Plaintiff,

v.                                        Case No. 1:16-cv-1142
                                          Hon. Ray Kent
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## OPINION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB) and supplemental security income (SSI).[1]

        Plaintiff alleged a disability onset date of September 14, 2010. PageID.347. She identified her disabling conditions as degenerative joint disease, depression, anxiety, agoraphobia, migraine headaches, diabetes, and comprehension problems. PageID.352. Prior to applying for DIB and SSI, plaintiff completed the 12th grade and had past employment as a mechanic, telemarketer, and classified sales agent. PageID.352-353. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on June 30, 2015. PageID.33-47.

---

[1] The administrative decision lists the claimant as "Andrew (aka Andrea) Robert Densmore" and includes the following statement "Claimant was referred to in the female gender and preferred to use the name Andrea Densmore as claimant's representative indicated in a Hearing Brief (B14E). Accordingly, the language of my decision was altered to accommodate claimant's gender preference." PageID.33.

This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can

2

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 14, 2010, and met the insured status requirements of the Social Security Act through September 30, 2013. PageID.36. At the second step, the ALJ found that plaintiff had severe impairments of fibromyalgia, migraines, degenerative joint disease with history of knee pain, shortness of breath, obesity, anxiety/panic disorder with agoraphobia, depression/affective disorder, gender identity disorder secondary to congenital XXY, and personality disorder. PageID.36. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.37.

The ALJ decided at the fourth step that:

> [C]laimant has the residual functional capacity to do light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can 20 pounds occasionally and lift or carry 10 pounds frequently. She can stand/walk and sit for at least 6 hours each in an 8-hour workday. However, she can do occasional climbing of ramps or stairs; occasionally balance, stoop, kneel, crouch, and crawl; and no climbing of ropes, ladders, or scaffolds. She can understand, remember and concentrate on both simple and detailed instruction. Claimant can carry out simple tasks and pay attention on a sustained basis. She can interact occasionally with co-workers and the public. She

can respond appropriately to supervision. Claimant can follow an ordinary routine
without special supervision and make simple work related decision [sic].

PageID.38.

In making this determination, the ALJ in this case (James J. Kent) noted that ALJ Sherry Thompson had issued an unfavorable decision on September 13, 2010, which found that plaintiff had the residual functional capacity (RFC) to do a limited range of light work. PageID.39. The ALJ relied on this previous determination stating:

> I found AR 98-4(6) is applicable here and found claimant was able to do the same less than the full range of light work. In this case, both new evidence that was not new and material evidence was considered.

PageID.39.[2] The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.45.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.46-47. Specifically, the ALJ found that plaintiff could perform the requirements of light and unskilled occupations such as hand packager (300,000 jobs nationwide), material handler (45,000 jobs nationwide), and equipment cleaner (65,000 jobs nationwide). PageID.46. Accordingly, the ALJ determined that

---

[2] AR 98-4(6) provides in pertinent part that:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

plaintiff has not been under a disability, as defined in the Social Security Act, from September 14, 2010 (the alleged onset date) through June 30, 2015 (the date of the decision). PageID.47.

**III. Discussion**

Plaintiff set forth two issues on appeal:

> **A. The ALJ's finding that plaintiff's activities discredit her testimony and that of medical sources limiting her is not supported by substantial evidence and does not reflect an ability to work on a regular and continuing basis.**

This claim raises an issue of credibility. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective

6

complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Here, the ALJ evaluated plaintiff's credibility as follows:

> In assessing claimant's credibility, I find her partially credible for somewhat limited activities of daily living but she admitted she could do personal care, shop, cook, attend appointments, clean, be self-employed and visit with others. She also has sufficient concentration to watch television, drive, fix cars and hunt ( 4E, 7F). Claimant testified she could lift 20 pounds and reported chopping wood on more than one occasion (9F66, 15F53). Claimant's treatment has been routine and conservative in terms of her physical conditions with treatment that was generally successful in controlling those symptoms (1F, 3-4F, 10-11F, 16F). Her treatment was also relatively effective in relieving her mental health symptoms that required no hospitalizations and stabilized to the point she no longer needed treatment from a psychiatrist (15F19). She also reported medication helped improve her symptoms and even when she stopped taking them reported she felt "decent (9F39, 46-49, 66, 15F53, 90, 114)." Claimant cancelled a number of therapy appointments and chose not to go because of deer hunting, which suggests her symptoms may not have been as serious as has been alleged. The record reflects work activity after the alleged onset date that indicates her daily activities have been somewhat greater than she has reported (7F). The claimant's allegations are credible to the extent they are consistent with RFC.

PageID.43.

The gist of plaintiff's claim is that the ALJ discounted her credibility based upon her daily activities (e.g. self-employment car repair, splitting/cutting/hauling wood, and climbing into a tree stand to hunt) and that these activities do not demonstrate an ability to engage in sustained work activities. Plaintiff's Brief (ECF No. 12, PageID.858-859). The Court disagrees. Contrary to plaintiff's contention, the ALJ could properly "consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Walters*, 127 F.3d 525, 532 (6th Cir. 1997). "[A]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon the claimant's credibility." *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012) (internal quotation marks omitted). While plaintiff may not have engaged vigorously in all of these

7

activities, such endeavors are not indicative of an invalid, incapable of performing the types of work identified by the ALJ. *See, e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 846 (6th Cir. 2005) (substantial evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance" and could "engage in reading and playing cards on a regular basis, both of which require some concentration") (footnote omitted); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 358 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability). The ALJ's credibility determination is supported by substantial evidence. There is no compelling reason to disturb the ALJ's credibility determination in this case. *Smith*, 307 F.3d at 379. Accordingly, plaintiff's claim of error will be denied.

> **B. The ALJ's handling of plaintiff's mental impairment is based upon a significant error and a failure to fully account for the limitations that impairment would impose.**

Plaintiff makes two claims with respect to her mental condition.

**1. Depression**

First, plaintiff contends that the ALJ contends did not account for her lack the motivation and desire to get out of bed or function effectively due to severe depression. Plaintiff's Brief at PageID.860-861. The Court disagrees. The ALJ noted that in October 2010 (the month after ALJ Thompson's unfavorable decision), plaintiff sought treatment for depression and agoraphobia with Christine Keener, LMSW, "who found her to have **unremarkable mental status**, except sleep problems and vague report of hallucinations." PageID.40 (emphasis in original). The ALJ addressed

plaintiff's treatment with Ms. Keener and Nurse Practitioner Susan Gabriel in detail. PageID.40-45. The record reflects that plaintiff did not attend all of her scheduled therapy sessions, that she has sufficient concentration to watch television, drive, fix cars and hunt, that her mental health treatment has been routine and conservative, and that "[h]er treatment was also relatively effective in relieving her mental health symptoms that required no hospitalizations and stabilized to the point she no longer needed treatment from a psychiatrist." PageID.40-43. In this regard, the ALJ noted that "Claimant chose not to go to therapy because she would be deer hunting and reported repairing her car (7F41, 44, 50)" which "suggests her symptoms may not have been as serious as has been alleged" PageID.41, 43. The ALJ considered and rejected plaintiff's claim of disabling depression. Accordingly, plaintiff's claim of error will be denied.

### 2. Gender identity disorder/gender dysphoria

Second, plaintiff contends that the ALJ failed to recognize the extraordinary nature of plaintiff's diagnosis of gender identity disorder/gender dysphoria. Plaintiff's Brief at PageID.861-862. The gist of plaintiff's claim is that she could not function in the workplace. *See* Plaintiff's Brief (ECF No. 12, PageID.861). Plaintiff contends that the ALJ erred because finding "[t]hat someone might be able to go to a store, visit friends, or attend a wedding . . . does not necessarily mean that they could tolerate the inevitable comments and catcalls from coemployees and supervisors on a full-time job, even with the limited interaction the ALJ provided for." *Id*. While plaintiff appears to contest that portion of the ALJ's residual functional capacity (RFC) that limits her to simple tasks and occasional interaction with the public and supervisors, *see* PageID.38, she does not develop this argument. Rather, plaintiff contends that the ALJ never contemplated her unique difficulties in dealing with people's remarks as the result of her efforts to dress like a female

and wear makeup and that the case should be remanded "for further consideration of the impact of these decidedly unusual problems before a finding as to plaintiff's RFC can be appropriately rendered." Plaintiff's Brief at PageID.861-862.

Plaintiff's contention that the ALJ failed to recognize the extraordinary nature of plaintiff's diagnosis of gender identity disorder/gender dysphoria is without merit. The ALJ and plaintiff's counsel questioned plaintiff on all of her non-physical problems, including the gender identity disorder. PageID.65-78. The ALJ's review of the medical evidence included a detailed review of her diagnoses, alleged impairments, and treatment. PageID.40-45.

Finally, to the extent that plaintiff suggests that the RFC may be flawed, her suggestion is without merit. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. §§ 404.1545 and 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). Here, substantial evidence supports the ALJ's conclusion that plaintiff could perform work involving simple tasks, simple work related decisions, and occasional interaction with others (i.e., hand packager, material handler, and equipment cleaner). Accordingly, plaintiff's claims of error will be denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: September 6, 2017 /s/ Ray Kent
RAY KENT
United States Magistrate Judge